IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

```
GERALD B. NELSON, III,        )
                              )
      Plaintiff,              )
                              )      CIVIL ACTION NO.
      v.                      )      3:10cv1005-MHT
                              )          (WO)
RUSSELL COUNTY BOARD OF       )
EDUCATION, et al.,            )
                              )
      Defendants.            )
```

## OPINION

Plaintiff Gerald B. Nelson, III, brings this lawsuit against defendants Russell County Board of Education, WTVM Channel 9, Lalanya Almesha Ramsey (in her individual capacity), and Yvette M. Richardson (in her individual capacity) asserting numerous constitutional violations and state torts.  Jurisdiction is proper under 28 U.S.C. §§ 1343 (civil rights) & 1367 (supplemental).  The cause is before the court on the defendants' motions for summary judgment.  For the reasons that follow, the motions will be granted.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. BACKGROUND

Nelson is a tenured teacher employed by the Russell County Board of Education since 1997. He serves as the band director and music teacher at the Russell County Middle School. From at least 2004 until 2009, he was active in the Russell County Educators Association, a teacher's union. During this time, he was the building representative, vice president, and president of the local association.

Nelson alleges that he has experienced retaliatory acts at the hands of Russell County Middle School Principal Ramsey.  He accuses Principal Ramsey of multiple acts of harassment, including asking him to attend school-training meetings and parent-teacher conferences after hours, denying field-trip proposals, preventing the band from performing at certain school events, and being rude in person and by email.

On March 4, 2009, Nelson had an altercation with a minor student.  In a signed, handwritten statement submitted on the day of the incident, Nelson states as follows:

> "[The student] came into the hall while I was at my door with Mr. Baraca. [The student] then came to my door and said to a[nother] student, in my class, 'I can't get into trouble anymore.' I told [the student] to go to class before you get into trouble.  He then said 'you don't tell me what the hell to do I am going to talk to him Fuck you.'  He went passed me and went over there to talk to this student anyway.  I went in and told him 'you don't come into my mother fuckin classroom and tell me what to do.'  I then got my behavior log and

3

> told [the student] to come with me to
> the office.  He then went to the gym
> after many warnings to come with me.  I
> went to the gym top couch Malcolm on the
> hand to look.  I went to the top and
> [the student] said 'If you touch me, I
> will fuck you up.'  I went to get [the
> student] by the wrist when he push away
> and swung and hit me in the face.  I
> then grab [the student] with my left
> hand around the neck picked him up and
> put him to the floor. [The student] was
> still swinging his fist and legs.  I
> held him there until coach came."

Nelson Statement (Doc. No. 71-2) at 10 (typographical or

grammatical errors in the original).  The defendants have

submitted other statements by school administrators, the

victim, and other students confirming a similar version

of events.

The altercation attracted local media coverage.  WTVM

Channel 9's website ran a story entitled "Russell County:

Student says teacher choked him."  WTVM Story (Doc. No.

85-2) at 2.  The news story includes quotes from School

System Superintendent Richardson.  The news story

recounts the student's allegations and the fact that an

investigation is ongoing.

4

Nelson was given notice by Superintendent Richardson that she was recommending his termination.  Richardson's letter cited two grounds for dismissal:

> "1.  On or about March 4, 2009, Gerald B. Nelson assaulted and battered a student by choking the student around the neck with his hands(s). [sic] By his actions Mr. Nelson physically abused the student.

> "2.  On or about March 4, 2009, Gerald B. Nelson, performed in an unprofessional manner by using profanity addressed to a student and in the presence of the student and other students."

Richardson Letter (Doc. No. 71-2) at 32.

The letter informed Nelson of his right to request a conference with the Russell County School Board and to have an attorney and court reporter present.  Id. at 32-33.  He received a hearing and attended with a union attorney.  He was permitted to testify in his defense.

After the hearing, Nelson received written notice that the school board upheld Superintendent Richardson's

recommendation for dismissal.  He was informed that he had a right to appeal this determination.

He appealed his termination to an arbitrator who heard testimony for two days.  The arbitrator sided with Nelson on his termination claim and found that Nelson did not use excessive force even though his "poor judgment escalated the situation from a verbal exchange of words to what ultimately turned out to be a physical altercation."  Arbitrator's Decision (Doc. No. 71-2) at 47.  The arbitrator, however, concluded that Nelson acted unprofessionally by using profanity in front of students.  Based on these findings, the arbitrator imposed a 15-day unpaid suspension and reinstated Nelson with back pay and other benefits.[1]  The school board's appeal of the arbitrator's decision was dismissed.

Nelson subsequently returned to work at the school; he contends that Principal Ramsey continues to act

_____

    1.  The arbitrator also concluded that political and other improper motives did not factor into the termination decision.

6

unprofessionally toward him.   He then initiated this lawsuit.

## III.   DISCUSSION

At the outset, the court notes that it has endeavored to make sense of Nelson's "shotgun" pleading and incoherent briefing.   Nelson's first amended complaint includes multiple cut-and-pasted West Law headnotes. Nelson's opposition brief consists of bullet-pointed factual allegations and a rambling list of elements of the claims and citations.   At no point does Nelson's brief attempt to respond directly to the arguments marshaled by the defendants' motions for summary judgment.   To the extent that Nelson contends his complaint pleads any claims not mentioned in this opinion, summary judgment is appropriate on them as well for failure to state a claim.[2]

_____

2.  Nelson's amended complaint alludes to a "hostile work environment" claim but makes no allegations regarding discrimination on the basis of race, gender, age, disability, or any other protected basis.   The

7

A.  Due Process

Nelson claims that his temporary termination violated his 'procedural' due-process rights.[3]  A court addressing such a challenge conducts a dual inquiry: "Did the

_____

references to a hostile-work environment are included only in a "narrative statement of facts."  The complaint makes no reference to a "hostile work environment" in any of the counts.  During an on-the-record pretrial conference held on June 8, 2012, Nelson's counsel conceded that she had not brought a hostile-work environment claim.  As such, the court construes the complaint as not bringing any claim of hostile-work environment.

3.  Nelson also alleges that two attempted transfers in 2006 violated his due-process rights.  These claims are time barred by 42 U.S.C. § 1983's two-year statute of limitations.  <u>See</u> <u>Mann v. Darden</u>, 630 F. Supp. 2d 1305, 1310 (M.D. Ala. 2009) (Thompson, J.) (explaining that § 1983 adopts a State's limitations statute for personal-injury actions and that Alabama has a two-year statute of limitations).

Moreover, because Superintendent Richardson was not even employed by the school board in 2006, summary judgment should be granted to her on that ground alone.  Richardson also contends that she is entitled to summary judgment on other state-law tort claims on a similar ground, but because the court is rejecting those claims on the merits, it sees no need to parse Richardson's employment history and Nelson's claims.

8

plaintiff have a property interest of which he was deprived by state action?  If so, did the plaintiff receive sufficient process regarding that deprivation?" Ross v. Clayton County, 173 F.3d 1305, 1307 (11th Cir. 1999). It is undisputed that, as a tenured teacher, Nelson had a property interest in his position.  Thus, the court turns to whether he received constitutionally adequate process.

"Procedural due-process analysis is concerned with whether the proceedings were reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Ashe v. City of Montgomery, 754 F. Supp. 2d 1311, 1318 (M.D. Ala. 2010) (Thompson, J.).  "A procedural due process violation is not complete unless and until the State fails to provide due process." McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (internal quotation marks omitted).

Here, Nelson was afforded adequate due process.  He was given written notice of his right to request a hearing to challenge his termination.  He exercised that right, testified, and was aided by an attorney.  He was then provided notice of his right to appeal the hearing's adverse determination.  He appealed to an arbitrator, who held a two-day hearing before reinstating him to his prior position.  It is unclear what additional procedures Nelson believes were required by either Alabama law or the Fourteenth Amendment.  Nonetheless, there is no genuine dispute of material fact that he received constitutionally adequate due process.

B.  First Amendment Retaliation

To prove a First Amendment retaliation claim, "the commonly accepted formulation requires that a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected

10

speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." <u>Bennett v. Hendrix</u>, 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted).

The first prong "requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006) (citation omitted). "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case." <u>Connick v. Myers</u>, 461 U.S. 138, 149 (1983). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without

intrusive oversight by the judiciary in the name of the First Amendment." Id. at 146.

Neither Nelson's complaint nor his opposition brief identifies what speech he believes constituted a matter of public concern. The court, therefore, turns to matters listed by him in his deposition. Nelson claims that his First Amendment rights were violated when he was told to stop speaking at a school-board budget hearing at which only board members were permitted to speak; when his requests for band field trips were denied; when he asked for assistance in his classroom to deal with a violent student and no one responded; and when he requested extra chairs from Principal Ramsey and she never acquired them for his classroom. See Nelson Deposition (Doc. No. 85-1) at 147-50.[4] Only Nelson's first grievance may arguably be classified as a matter of public concern. See Pickering v. Board of Education, 391

---

4. The court notes that Nelson provided examples of when his right to free speech was allegedly abridged, not when he spoke out about matters of public concern.

12

U.S. 563 (1968) (holding that a teacher's comment about education funding was protected by the First Amendment).

As to the denial of his right to speak at a public hearing as a union official, Nelson could not recall when the meeting occurred, though it would have preceded the physical altercation with the student in March 2009. Further, he does not list any specific retaliatory acts-- other than the termination--that were connected to his speech. Even assuming Nelson provided a temporal link between his protected speech and the termination, the court is compelled to conclude that his "retaliation claim would still be meritless, for the evidence is, simply put, overwhelming that [his] speech was not causally connected to [his] dismissal. ... No reasonable factfinder could find that there was a causal connection." Heenan v. Rhodes, 757 F. Supp. 2d 1229, 1241 (M.D. Ala. 2010) (Thompson, J.), modified on other grounds, 761 F.Supp. 2d 1318 (M.D. Ala. 2011) (Thompson, J.). The attempted termination stemmed directly from a

13

physical altercation with a student--an incident documented by numerous witness statements and Nelson's own admission. As such, summary judgment is due to be granted on his First Amendment retaliation claim.[5]


C. Defamation

Nelson brings a defamation claim against all defendants, though his pleading targets WTVM Channel 9. To establish a defamation claim, Nelson must show "'[1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either

_____

5. At various times in his complaint and opposition brief, Nelson cites "supervisory liability" as an independent cause of action under 42 U.S.C. § 1983. The court interprets this argument as alleging that the school board is liable on the First Amendment retaliation count. Because Nelson has failed to establish (1) that his constitutional rights were violated and (2) that the school board had a custom or policy to retaliate against union members, his supervisory-liability argument fails as a matter of law. See Los Angeles County v. Humphries, 131 S. Ct. 447, 449 (2010) (explaining that plaintiffs must establish a municipal policy or custom to hold a municipal entity liable under 42 U.S.C. § 1983).

actionable without having to prove special harm
(actionable per se) or actionable upon allegations and
proof of special harm (actionable per quod).'" Ex Parte
Crawford Broadcasting, 904 So. 2d 221, 225 (Ala. 2004)
(quoting Delta Health Group, Inc. v. Stafford, 887 So. 2d
887, 891 (Ala. 2004)).

"Truth is an absolute defense to a defamation claim."
S.B. v. Saint James School, 959 So. 2d 72, 100 (Ala.
2006) (citing Foley v. State Farm Fire & Cas. Ins. Co.,
491 So. 2d 934 (Ala. 1986)).  In addition, "[i]n libel
and slander actions, a showing that the alleged
defamation was made on a privileged occasion or under
circumstances and conditions which made it privileged in
law constitutes a complete defense."  Nelson v.
Lapeyrouse Grain Corp., 534 So. 2d 1085, 1092 (internal
quotations omitted)).

Here, the news story at issue was based on the
physical altercation between Nelson and the minor
student.  As noted above, Nelson has admitted to striking

the student.   In light of this concession and after a
thorough review of the article, the court finds that the
story was true.   Because truth is always a complete
defense to a defamation claim, the court will grant
summary judgment to all defendants as to this count.


D.  Other State Torts

As an initial matter, the school board is immune from
common-law torts under the Alabama Constitution.   <u>Ex
parte Hale County Board of Education</u>, 14 So. 3d 844, 848
(Ala. 2009) ("Because county boards of education are
local agencies of the State, they are clothed in
constitutional immunity from suit...."\).   The court,
therefore, turns to whether Nelson has valid claims
against Principal Ramsey and Superintendent Richardson.[6]

_____

6. The court construes Nelson's complaint as bringing
only a defamation claim against WTVM Channel 9.   To the
extent that Nelson is alleging other state torts against
WTVM Channel 9, summary judgment is due to be granted on
these claims for the reasons given below.

16

### 1. Alabama Teachers' Tenure Law

It appears that Nelson believes the defendants are liable under the Alabama Teachers' Tenure Law, 1975 Ala. Code § 16-24-1, <u>et</u> <u>seq</u>. Even assuming that the Alabama Teachers' Tenure Law sounds in tort against school-board employees, the court grants summary judgment for the same reason that Nelson's due-process claim failed: he was given all the process that was due under state law.

### 2. Improper Bias Against Teachers

Nelson cites <u>Marshall County Board of Education v.</u> <u>State Tenure Commission</u>, 280 So. 2d 130 (Ala. 1973), for the proposition that an "improper bias against teachers" tort exists in Alabama. But <u>Marshall County</u> involved a contract dispute, not the creation of a new tort. To the extent that such a claim does sound in tort, the court construes it as coextensive with Nelson's First Amendment claim and rejects it for the same reasons.

17

### 3.  Harassment

Nelson also alleges that defendants committed multiple acts of "harassment." Nelson's complaint does not elaborate on his harassment claim nor does it allege that the harassment was sexually or racially motivated. Once again, Nelson creates a tort out of thin air. "In Alabama, harassment claims do not present an independent cause of action but must proceed under other common-law tort theories." Hendrix v. Chambers, 2008 WL 509633, *4 (M.D. Ala. Feb. 22, 2008) (Thompson, J.). See also Stevenson v. Precision Standard, Inc., 762 So. 2d 820, 825 n.6 (Ala. 1999) ("It is well settled that Alabama does not recognize an independent cause of action for sexual harassment. Instead, claims of sexual harassment are maintained under common-law tort theories such as assault and battery, invasion of privacy, negligent training and supervision, and outrage."). Thus, summary judgment will be granted on this claim.

####    4.   Outrage

Alabama's tort of outrage "is essentially equivalent to what many states refer to as 'intentional infliction of emotion distress.'"   K.M. v. Alabama Department of Youth Services, 360 F. Supp. 2d 1253, 1259 n.4 (M.D. Ala. 2005) (Thompson, J.).   In order to prove a claim of outrage, a plaintiff must establish that, "(1) the defendant ... intended to inflict emotional distress, or should have known that his or her acts would result in emotional distress; (2) the act [was] extreme and outrageous; (3) the act ... caused plaintiff['s] distress; and (4) plaintiff['s] emotional distress [was] so severe that no reasonable person could be expected to endure it."   Id. at 1259 (citing Harrelson v. R.J., 882 So. 2d 317, 322 (Ala. 2003)).   The Supreme Court of Alabama has emphasized "that this tort does not recognize recovery for 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" American Rd. Serv. Co. v. Inmon, 394 So. 2d 361, 364-65

19

(Ala. 1980) (citation omitted).  Rather, recovery is appropriate for only "conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Id. at 365. The court is aware of "only three limited circumstances" where the Alabama Supreme Court has recognized this tort: "(1) wrongful conduct within the context of family burials; (2) an insurance agent's coercing an insured into settling an insurance claim; and (3) egregious sexual harassment." Carraway Methodist Health Systems v. Wise, 986 So. 2d 387, 401 (Ala. 2007).

Here, Nelson articulates no alleged conduct by Principal Ramsey and Superintendent Richardson that could be viewed as "beyond all possible bounds of decency," so that it must "be regarded as atrocious and utterly intolerable in a civilized society." Inmon, 394 So. 2d at 365.  As such, summary judgment will be granted against Nelson on his outrage claim.

### 5.   Interference with Contract

The elements of a claim for tortious interference with a contract are "'(1) the existence of a contract or business relation, (2) the defendant's knowledge of the contract or business relation, (3) intentional interference by the defendant with the contract or business, and (4) damage to the plaintiff as a result of the defendant's interference.'" Serra Chevrolet, Inc. v. Edwards Chevrolet, Inc., 850 So. 2d 259, 265 (Ala. 2002) (quoting Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So. 2d 238, 246-47 (Ala. 1992)).

As with his other state-law claims, Nelson provides no specific basis for this claim in his pleadings.  And, as with his claims regarding teacher tenure, Nelson has failed to adduce any evidence that the defendants interfered with his contract outside the established and appropriate termination procedures.  As such, Nelson

21

cannot establish the elements for this claim, and summary judgment is appropriate on it.

\*   \*   \*

An appropriate summary judgment in favor of the Russell County Board of Education, WTVM Channel 9, Principal Ramsey, and Superintendent Richardson and against Nelson will be entered.

DONE, this the 11th day of June, 2012.

      /s/ Myron H. Thompson      
UNITED STATES DISTRICT JUDGE